```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,                 :
                                          :    21-cr-412 (JSR)
         -v-                              :
                                          :    MEMORANDUM ORDER
                                          :
ISRAEL GARCIA,                            :
                                          :
         Defendant.                       :
------------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Defendant Israel Garcia is charged in the present indictment with participating in a conspiracy to distribute and possess to distribute crack cocaine, heroin, and fentanyl, in violation of 21 U.S.C. § 841 (Count One), and with using and carrying, and aiding and abetting the use and carrying of, a firearm in furtherance of that drug conspiracy, in violation of 18 U.S.C. § 924 (Count Two). Garcia pleaded guilty to Count One on March 8, 2022. Now before the Court is Garcia's motion to withdraw his guilty plea. For the reasons set forth below, the Court denies Garcia's motion.

## BACKGROUND

As alleged by the Government, from 2010 to 2021 Garcia controlled the sale of narcotics in the vicinity of East 184th Street and Morris Avenue, in the Bronx, New York, as the leader of the "Get Money Gunnaz" or "GMG" set of the New York City-wide "Young Gunnaz" or "YGz" street gang (the "GMG YGz"). According to the Indictment, GMG YGz members possessed firearms in connection to their activities and committed acts of violence against rival street gangs. ECF No.

1

42. In a two-count Superseding Indictment, the Government charged Garcia on July 21, 2021, with participating in a narcotics conspiracy and using a firearm in furtherance of that conspiracy. Id. Together, the two charges carry a mandatory minimum of fifteen-years imprisonment. See 21 U.S.C. §§ 841(b)(1)(A), 924(c)(1)(A). At his arraignment on June 28, 2022, Garcia entered a plea of not guilty. Subsequently, Garcia was scheduled to stand trial on these charges beginning March 14, 2022.

On March 3, 2022, after the Government had filed a pre-trial motion in limine and produced discovery material pursuant to 18 U.S.C. § 3500 and Giglio v. United States, 405 U.S. 150, 154 (1972), Garcia's then-counsel, appointed pursuant to the Criminal Justice Act ("CJA"), indicated that Garcia wished to plead guilty, pursuant to a plea agreement, to Count One of the Superseding Indictment, which carries a ten-year mandatory minimum. The Court scheduled a change of plea hearing for the following day, March 4, 2022. However, soon after the hearing began, Garcia indicated that he did not intend to enter a new plea at that time and the Court concluded the hearing.

Thereafter, Garcia indicated that he wished to be appointed new counsel, and on March 7, 2022, the Court held a conference to consider the defendant's request, consisting primarily of an extensive proceeding with the defendant and defense counsel (outside the presence of the Government), in which the Court discussed with Garcia both his dissatisfaction with his counsel and the proposed

plea agreement. Ultimately, the Court instructed Garcia to think those matters over and to return the following day with a decision as to (i) whether he still wanted a change of counsel, and (ii) whether he wished to proceed to trial or plead guilty. ECF No. 142-2 at 22.

The following day, on March 8, 2022, the Court held a conference at which Garcia stated that he wanted to retain his then-counsel and that he would plead guilty. ECF No. 142-3 at 2. He then pled guilty to Count One of the Superseding Indictment pursuant to a plea agreement with the Government. At the plea hearing, Garcia allocated fully on his plea and answered the Court's questions under oath. In so doing, Garcia stated, among other things, that he understood the proceedings, had had a full opportunity to discuss the case and plea with his attorney, was satisfied with his attorney's representation of him, and understood the terms of the plea agreement. Id. at 4-9. After the Court accepted Garcia's plea, and following the Government's proffer regarding the defendant's alleged participation in a 2010 murder and attempted intimidation of a witness, the Court set sentencing for June 29, 2022, and ordered the defendant to surrender no later than March 14, 2022, by 2 p.m. The defendant surrendered as ordered and remains in custody.

On April 7, 2022, Garcia submitted a pro se motion asking the Court to appoint new counsel and to allow Garcia to withdraw his guilty plea and proceed to trial. At a hearing on May 2, 2022, the

3

Court relieved Garcia's former counsel, Raoul Zalzberg, Esq., and appointed new CJA defense counsel, Avraham Moskowitz, Esq. The Court gave the defendant until May 26, 2022, to consult with new counsel as to whether he still intended to move to withdraw his plea. Garcia subsequently confirmed his intention to move to withdraw his plea, and the Court instructed the defendant to submit a sworn declaration in support of the motion to withdraw.

On June 22, 2022, Garcia submitted a short, signed affirmation in which he stated, in relevant part, that he "did not receive the plea agreement pursuant to which [he] pled guilty until shortly before [his] plea hearing" and only reviewed the agreement with his attorney "ten minutes before [his] court appearance," that he "did not fully understand the terms of [the] plea agreement," and that he answered the Court's questions "in the way that [his counsel] told [him] to, despite . . . not fully understand[ing]" them. ECF No. 174 at 1.

On the Government's motion, the Court then held that Garcia had waived his attorney-client privilege with respect to the aforementioned assertions and ordered Garcia's former counsel to submit a responsive affidavit. ECF No. 188. Thereafter, Mr. Zaltsberg submitted a responsive affidavit that described in detail the prior interactions between himself and the defendant, contradicting the substance of the defendant's affirmation in virtually every respect. For example, in contrast to Garcia's statement that he only reviewed the plea agreement with his attorney

4

a few minutes before his court appearance, Mr. Zaltsberg's affidavit describes multiple meetings and phone calls in which he and the defendant discussed the terms of the plea agreement prior to Garcia entering his guilty plea. See Affidavit of Raoul Zaltsberg, Esq. ¶ 1.

The Court held a hearing on the defendant's motion on July 5, 2022, at which time it heard argument from the Government and the defendant's present counsel. The Court took the matter under advisement and, on July 18, 2022, denied Garcia's motion by bottom-line order. See ECF No. 207.

## DISCUSSION

Rule 11(d) allows a defendant to withdraw a guilty plea, after a court accepts the plea but before sentencing, for "any fair and just reason." Fed. R. Crim. P. 11(d)(1), (d)(2)(B). The defendant bears the burden of showing that such a reason exists. See United States v. Doe, 537 F.3d 204, 210 (2d Cir. 2008). "That burden has been described by the Second Circuit as 'stringent,'" United States v. Grant, 2014 WL 4828469, at *7 (S.D.N.Y. Sept. 25, 2014) (quoting United States v. Schmidt, 373 F.3d 100, 102 (2d Cir. 2004)), reflecting society's "strong interest in the finality of guilty pleas" and the recognition that "allowing withdrawal of pleas . . . delays and impairs the orderly administration of justice," United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997).

Still, the decision to allow a defendant to withdraw a guilty plea is one committed to the district court's discretion, "a

5

discretion justified by [the] 'feel of the case' possessed by the judge who observed the defendant at the taking of the plea." United States v. Saft, 558 F.2d 1073, 1082 (2d Cir.1977); see also United States v. Arteca, 411 F.3d 315, 319 (2d Cir. 2005). And this Court has granted such motions in the part, see, e.g., United States v. Encarnacion-Lafontaine, 2014 WL 3500557, at *10 (S.D.N.Y. July 9, 2014), recognizing that "the right of the accused to a trial by a constitutional jury" must be "jealously preserved," Patton v. United States, 281 U.S. 276, 312(1930). Furthermore, the Court approaches such motions mindful of the manner in which mandatory minimum sentences, alongside the draconian federal sentencing guidelines, have sometimes "provide[d] prosecutors with weapons to bludgeon defendants into effectively coerced plea bargains." Jed S. Rakoff, Why the Innocent Plead Guilty and the Guilty Go Free 23 (2021).

That said, it is evident to the Court that allowing Garcia to withdraw his plea would on this record be inconsistent with the interests of justice. Garcia argues that his motion to withdraw the guilty plea should be granted on the grounds that the plea "was not knowing and voluntary." ECF No. 174 ¶ 1. "Where a motion to withdraw a plea is premised on involuntariness, the 'defendant must raise a significant question about the voluntariness of the original plea.'" Doe, 537 F.3d at 211 (quoting United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997)). In so doing, the defendant must overcome the "strong presumption of verity" that attaches to the

"[s]olemn declarations in open court" made during the plea allocution. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

"A defendant's bald statements that simply contradict what he said at his plea allocution" will not meet this standard. Torres, 129 F.3d at 715. And yet that is the gist of what Garcia offers here, stating in a brief affidavit that he only received the plea agreement "shortly before [he] pled guilty" and that he did not "understand the terms of [the] agreement." ECF No. 174 ¶¶ 2-3. Even without relying on the highly detailed contrary assertions made by Garcia's former counsel, it is clear that these statements fly in the face of the truth. The defendant's guilty plea was the culmination of three separate conferences before this Court in the days prior to trial – during which the defendant was given multiple opportunities to weigh whether or not to proceed to trial.[1] Among other things, in the extensive ex parte colloquy with the defendant and his counsel on March 7, 2021, the Court itself took pains to explain to defendant the consequences of pleading guilty pursuant to the plea agreement. ECF No. 142-2 at 20. The Court thus places no weight on the contrary assertions Garcia now makes.

It is thus obvious that Garcia has failed to meet his heavy burden of establishing good cause for withdrawal of his plea.

---

[1] Indeed, because of the time Garcia took to consider the plea agreement, it had technically expired by the time he agreed to it on March 8, 2022 – although the Government nevertheless agreed to keep it open. See ECF No. 142-2 at 24.

Furthermore, Garcia's false statements, not to mention his disregard for the oath he took to tell the truth, attest to his failure to take seriously these proceedings. "A defendant . . . must not be permitted to 'degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess.'" United States v. Mikhailin, 2014 WL 5369645, at *4 (S.D.N.Y. Oct. 17, 2014) (quoting United States v. Hyde, 520 U.S. 670, 676-77 (1997)).

## CONCLUSION

For the foregoing reasons, Garcia's motion to withdraw his plea is denied. He will be sentenced on October 12, 2022, at 11:00 am.

SO ORDERED.

Dated:  New York, NY
        July 21, 2022

_____
JED S. RAKOFF, U.S.D.J.