UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

ISRAEL GARCIA,

        Defendant.

---

21-cr-412 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

    Defendant Israel Garcia moves on the basis of new evidence for reconsideration of the Court's prior ruling denying his request to withdraw his guilty plea. On March 8, 2022, Mr. Garcia pled guilty to participating in a narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On April 7, 2022, Mr. Garcia, then proceeding pro se, moved to withdraw his guilty plea because, he said, he was coerced into making it. See ECF No. 130. Based on the evidence available at the time, the Court denied Mr. Garcia's motion. See ECF Nos. 207, 208. New evidence, however, has surfaced, which not only tends to support Mr. Garcia's contention but also throws new light on other relevant facts. Based on the evidence now available, the Court hereby grants Mr. Garcia's motion for reconsideration and permits Mr. Garcia to withdraw his guilty plea.

1

I.  Background

The Government alleges that Mr. Garcia controlled the sale of narcotics in the vicinity of East 184th Street and Morris Avenue, in the Bronx, New York, as the leader of the "Get Money Gunnaz" or "GMG" subdivision of the New York City-wide "Young Gunnaz" or "YGz" street gang (the "GMG YGz"). In a two-count Superseding Indictment, the Government charged Garcia on July 21, 2021, with participating in a narcotics conspiracy and using a firearm in furtherance of that conspiracy.  ECF No. 42. Together, the two charges carry a mandatory minimum of fifteen-years imprisonment, see 21 U.S.C. §§ 841(b)(1)(A), 924(c)(1)(A), and a U.S. Sentencing Guidelines range of up to life imprisonment.  At his arraignment on June 28, 2022, Mr. Garcia entered a plea of not guilty.

On March 3, 2022, Mr. Garcia's then-counsel, Raoul Zaltzberg, Esq., indicated that Mr. Garcia wished to plead guilty pursuant to a plea agreement. Under that agreement, Mr. Garcia would plead guilty to Count One of the Superseding Indictment, which carries a ten-year mandatory minimum.

The Court scheduled a change of plea hearing for the following day, March 4, 2022.  However, soon after the hearing

began, Mr. Garcia indicated that he did not intend to enter a guilty plea. The Court promptly concluded the hearing.

On March 7, 2022, at Mr. Garcia's behest, the Court held a conference to discuss, inter alia, Mr. Garcia's expressed dissatisfaction with his counsel. As part of that hearing, the Court had an extensive ex parte colloquy with Mr. Garcia and Mr. Zaltzberg, during which the Court took pains to explain the legal consequences of pleading guilty pursuant to the Government's proposed plea agreement and to assure Mr. Garcia that he would face no sentencing penalty (other than the variance in the mandatory minimum) if he chose to go to trial and was convicted. Conference of Mar. 7, 2022, Tr. 20:13-21, 22:17-22. The Court also indicated that it would consider replacing Mr. Garcia's current counsel if that was still Mr. Garcia's preference. Id. at 22:7-8. Nonetheless, on March 8th, Mr. Garcia chose to keep his counsel and entered a guilty plea.[1]

On April 7, 2022, however, Mr. Garcia submitted a pro se motion seeking to withdraw his guilty plea, contending that he was pressured into making that plea. The Court appointed new counsel for Mr. Garcia and thereafter received affidavits from Mr. Garcia and Mr. Zaltzberg regarding Mr. Garcia's contention that he was pressured by Mr. Zaltzberg into pleading guilty.

---

[1] At that hearing, the Court, while advising Mr. Garcia of the Guidelines calculation of up to life imprisonment, stated that in this case the Guidelines range was "absurd." Conference of Mar. 8, 2022, Tr. 10:9-10.

After receiving briefing and hearing argument, the Court denied Mr. Garcia's motion by a "bottom-line" order dated July 18, 2022, followed by a memorandum order on July 22, 2022 stating the reasons for this decision.

On September 7, 2022, Mr. Garcia filed the current motion asking the Court to reconsider this decision based on new evidence. In support of this motion, Mr. Garcia, now represented by new counsel, submitted an undated recording of a conversation between him, the mother of his daughter, and Mr. Zaltzberg, which took place at some point prior to Mr. Garcia's entry of his guilty plea.[2] In that conversation, Mr. Zaltzberg asserted, in a very loud voice, that if Mr. Garcia lost at trial, he "faces life," and would "never see [his daughter] again, unless behind bars." Affirmation of Israel Garcia, ECF No. 233, Ex. B (hereinafter, "Garcia Aff."); see also Affidavit of Raoul Zaltzberg, ECF No. 238, Ex. A (hereinafter, "Zaltzberg Aff."), at 1. This conversation, Mr. Garcia affirmed, made him believe that he "had no choice but to plead guilty." Garcia Aff., at 1. After receiving responsive papers from the Government, the Court held an evidentiary hearing on December 20, 2022, at which both Mr. Garcia and Mr. Zaltzberg testified.

---

[2] Mr. Zaltzberg believes that the conversation took place immediately following the court appearance on March 4, 2022. See Zaltzberg Aff., at 1.

II. Discussion

    A. Legal Standard

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). This strict standard is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988). Accordingly, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013).

In a case involving withdrawal of a guilty plea, however, this strict standard for any motion for reconsideration must be read in the context of Rule 11(d) of the Federal Rules of Criminal Procedure, which allows a defendant to withdraw a guilty plea, after a court accepts the plea but before

sentencing, for "any fair and just reason." Fed. R. Crim. P. 11(d)(1), (d)(2)(B). The decision to allow a defendant to withdraw a guilty plea is one committed to the district court's discretion, "a discretion justified by [the] 'feel of the case' possessed by the judge who observed the defendant at the taking of the plea." United States v. Saft, 558 F.2d 1073, 1082 (2d Cir.1977); see also United States v. Arteca, 411 F.3d 315, 319 (2d Cir. 2005). Factors that guide the Court's judgment include: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the [G]overnment would be prejudiced by a withdrawal of the plea." United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004) (per curiam). Additionally, the Court may "look to whether the defendant has raised a significant question about the voluntariness of the original plea." Id. at 103; see also United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997).

Underlying all of this is the fundamental constitutional right of a criminal defendant to put the Government to its proof, as well as the growing evidence that innocent persons

frequently face pressure to plead guilty because of the harsh penalties they face if they go to trial and are convicted.[3]

### B. Analysis

Since the Court's initial ruling on Mr. Garcia's motion to withdraw his guilty plea, two new pieces of evidence have surfaced. The first is the recording of the aforementioned conversation between Mr. Garcia and Mr. Zaltzberg. In this recording, both the content and the tone of Mr. Zaltzberg's statements indicate that Mr. Zaltzberg believes very strongly that Mr. Garcia should not go to trial. As further elaborated at the evidentiary hearing on the instant motion, Mr. Zaltzberg's advice was based on his view that Mr. Garcia would very likely be convicted if he went to trial and, if convicted, would face a much stiffer sentence than if he had pled out. While Mr. Zaltzberg was obligated to give Mr. Garcia his best advice, the recording shows that Mr. Zaltzberg expressed this view in a way that could be interpreted as emphasizing a real possibility that Mr. Garcia might be sentenced to life in prison if he went to trial and was convicted. More generally, as Mr. Zaltzberg testified at the December 20, 2022 hearing, he was angry at Mr. Garcia's frequently changing positions on whether or not to accept the Government's plea bargain, which was due to elapse

---

[3] Some of this evidence is summarized in Jed S. Rakoff, Why the Innocent Plead Guilty and the Guilty Go Free (2021).

shortly, and Mr. Garcia's inconsistent receptivity to Mr. Zaltzberg's advice. See Conference of Dec. 20, 2022, Tr. 22-23:22-3. Thus, based on this new evidence, it is fair to infer that, despite assurances from the Court that there would be no penalty for going to trial beyond the variance in the mandatory minimum, Mr. Garcia was under substantial psychological pressure to plead guilty.

In light of this first item of new evidence, the Court has taken a fresh look at the transcript from Mr. Garcia's guilty plea hearing. At that hearing, while Mr. Garcia finally allocuted to the charge, he initially only stated, in a conclusory fashion, that he was "pleading guilty to conspire to distribute narcotics with other member [sic]." Conference of Mar. 8, 2022, Tr. 11:22-23. While the Court then inquired about more particular details, Mr. Garcia only admitted details of his offense in single-word responses to leading questions from the Court. Id. at 11:24-12:7. Viewed in the light of the new evidence, such response now appears consistent with someone who is pleading guilty under pressure. And in the hearing of December 20, 2022, Mr. Garcia testified unequivocally that he did not engage in the alleged conspiracy. Conference of Dec. 20, 2022, Tr. 20:17-20.

The second piece of new evidence concerns the alleged prejudice to the Government. In its original decision denying

8

withdrawal of Mr. Garcia's plea, the Court relied on representations from the Government that it would be prejudiced by withdrawal of the guilty plea because it reopened an issue of potential intimidation of an anonymous witness whom the Government would expect to call to testify at trial, and whom the Government believed Mr. Garcia had already sought to intimidate. Conference of May 2, 2022, Tr. 8:19-10:23. But at the December 20, 2022 conference, the Government made plain that, even if Mr. Garcia's plea was not withdrawn, it planned to call this witness anyway in connection with a planned "Fatico" hearing at which the Government would seek an increased sentence based on this witness's testimony. So the motive for Mr. Garcia to intimidate this witness -- assuming, arguendo, that it exists -- will exist regardless of whether the Court permits Mr. Garcia to withdraw his guilty plea. Thus, the Government's assertion of prejudice is considerably weaker than it was when the Court first considered Mr. Garcia's motion to withdraw his guilty plea.[4]

It should be noted, further, that Mr. Garcia has, by his own admission, repeatedly lied to the Court under oath, and so

---

[4] The Government also argued, at the conference of December 20, 2022, that it would suffer prejudice because its other witnesses, who also had some fear of intimidation, would be dismayed to be asked to testify after being told that Mr. Garcia's guilty plea had rendered their testimony unnecessary. Conference of Dec. 20, 2022, Tr. 40:9-25. This claim is common to most criminal cases and cannot, by itself, suffice to overcome a defendant's assertions of innocence.

the Court does not take his current assertions of innocence as necessarily truthful. But Mr. Garcia's affirmation that his plea was involuntarily made is now corroborated by a recording whose authenticity is not disputed, and is further supported by the Court's review of Mr. Garcia's bare-bones allocution. There is, therefore, a material risk that Mr. Garcia pled guilty, not because he wished to plead guilty, but rather because he feared the consequences of conviction as represented by his lawyer. And the Government has not adduced any prejudice sufficiently weighty to deny Mr. Garcia the opportunity to assert his constitutional right to stand trial. Thus, on balance, the Court finds that Mr. Garcia should be permitted to withdraw his guilty plea.

III. Conclusion

For the foregoing reasons, the Court hereby grants Mr. Garcia's motion for reconsideration. Accordingly, Mr. Garcia is hereby permitted to withdraw his guilty plea. Counsel for Mr. Garcia and for the Government are instructed to convene a joint call to Chambers by no later than 5:00 PM on January 6, 2023, to schedule a prompt jury trial.

The Clerk is respectfully directed to close entry number 233 on the docket.

SO ORDERED.

New York, NY
December 30, 2022

_____
JED S. RAKOFF, U.S.D.J.